FILED
2018 Dec-07  AM 11:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES R. WISEMAN,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | |
| | ) | |
| **ENCOMPASS HEALTH** | ) | **JURY DEMAND** |
| **CORPORATION,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |
| | ) | |

### COMPLAINT

## I.  NATURE OF THIS ACTION

1.  Plaintiff, James R. Wiseman, brings this action under the Americans with Disabilities Act, 42 U.S.C. §§ 12111 *et seq.* as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA"), and the Family Medical Leave Act, 29 USC § 2601 *et seq.*  Plaintiff timely filed his charge of discrimination within 180 days of the occurrence of the last discriminatory act. Plaintiff also timely filed his Complaint within ninety (90) days of the receipt of a Notice of Right to Sue issued by the EEOC.

## II.  JURISDICTION, VENUE, AND CONDITIONS PRECEDENT TO SUIT

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331,

1343, 1367, 2201 and 2202. Venue is proper in the Northern District of Alabama under 28 U.S.C. §1391(b).

## III.   PARTIES

3.   Plaintiff, James R. Wiseman, is a citizen of the United States over the age of majority, and is currently a resident of the State of Tennessee.

4.   Defendant, Encompass Health, ("Defendant") is an entity subject to suit under the ADA. At times relevant to this action, Defendant was doing business as HealthSouth Corporation.

## IV.   FACTS

5.   Plaintiff was employed by Defendant as its Director of Tax Planning from January 10, 2017 until his termination on December 5, 2017.

6.   Plaintiff has a diagnosis of Inflammatory Bowel Disease and more specifically Crohn's Disease, a debilitating but treatable chronic condition that qualifies as a disability under the Americans with Disabilities Act and a Serious Health Condition under the Family Medical Leave Act.

7.   Crohn's is a chronic disease that causes inflammation in the gastrointestinal tract. Crohn's is a potentially lifelong, chronic condition. Sufferers may experience periods when the disease flares up and causes symptoms, followed by periods of remission when symptoms may not be noticed.

2

8.     The most common signs and symptoms of Crohn's disease include diarrhea, abdominal cramping and pain, or weight loss. Other general signs and symptoms include feeling tired, nausea or loss of appetite, fever, and anemia. Sufferers may also experience inflammation outside of the intestinal tract, evidenced by joint pain or soreness, eye irritation, and skin changes that involve red, tender bumps under the skin.

9.     Plaintiff's Crohn's Disease interferes with numerous major life activities, as it limits his movements and requires him to remain near a restroom during periods of flare-up. It limits his ability to remain at his work station between scheduled breaks and interferes with his ability to concentrate on tasks, and interferes with his ability to travel, include interfering with commuting to and from work. It further interferes with other major life activities, including sleeping, eating, and digestive function.

10.    At the time Plaintiff was hired, his disease was in remission, and HealthSouth was initially unaware that he suffered from a chronic serious health condition or a disability.

11.    Plaintiff's performance was excellent. In 2017, Plaintiff initiated, led, and facilitated projects resulting in several millions of dollars in permanent and present value cash savings representing a large multiple of his salary.

12.  During 2017, Plaintiff initiated, led, and facilitated projects resulting in several millions of dollars in permanent and present value cash savings, representing a large multiple of his salary. His contributions included the review and correction of the Captive Insurance company tax return; 2017 and forward accelerated 50% bonus depreciation write-off for 3-year computer software; capturing the Indian Nation Employment Tax Credit for 2015 and 2016 and the Myrtle Beach property tax incentive.

13.  In addition to the above, Plaintiff initiated and was leading several significant projects at the time of his termination; these included taking advantage of the Research and Development Credit back to 2009, developing a tax strategy to unwind a long time issue with the ACE-IT computer software, and facilitating the company's strategy for deducting previously disallowed lobbying expenses. Further, Plaintiff oversaw Cost Segregation studies to depreciate new items on a faster schedule.

14.  A majority of Plaintiff's time was spent in the role of researching and documenting tax positions and tax treatment for non-recurring and non-ordinary transactions. This documentation was in the form of tax memorandum to files and was a solo activity.

15.  Throughout 2017, Plaintiff's health worsened to the point where in mid-

October 2017 it became necessary for Plaintiff to request the reasonable accommodation of occasionally working remotely in Birmingham or Nashville and working a flexible schedule to accommodate physician appointments and his general physical condition.

16.   Plaintiff discussed his need for reasonable accommodations in a meeting with Employee Relations Manager Jackie Dye and his supervisor Rob McCullum on or around October 16, 2017, and again on October 19, 2017.

17.   On October 27, 2017, Plaintiff provided an email to Ms. Dye with information from his nurse practitioner regarding Plaintiff's inflammatory bowel disease and stating that Plaintiff would benefit from "remote based work and flexible hours as needed."

18.   Plaintiff met with Ms. Dye and Mr. McCullum on November 2, 2017 for additional discussions regarding his need for reasonable accommodations.

19.   On Friday, November 17, 2017, Plaintiff requested to take PTO time for the following week due to his health.

20.   Thereafter, Plaintiff was admitted to the hospital via the Emergency Room on November 21, 2017.

21.   On November 22, 2017, Plaintiff had emergency surgery performed to drain an infected intestinal abscess and to place a drain portal, which would need

to remain in place for several weeks. Plaintiff remained in the hospital for six days and was released on Sunday, November 26, 2017.

22.     At this point, Plaintiff also had developed a salmonella infection due to a weakened immune system as a result of his condition and its treatment. Plaintiff immediately contacted HealthSouth and reiterated his request for the reasonable accommodation of being allowed to work temporarily from home, as he required in-home health care due to his serious health condition.

23.     Plaintiff provided a letter from his physician dated December 4, 2017 supporting his need for the reasonable accommodation of working from home. The letter states:

> The above referenced patient is under my care and was seen by me in the Colorectal Surgery clinic today. I have advised him that should [sic] only work from home at this time for several reasons. He is unable to sit for periods of time; his wound is actively draining requiring constant care and sanitation; the area has become infected recently, and limiting his access to a work place would lessen his chance of re-infection; and lastly, remaining in Nashville will allow him to seek medical care if needed from his current physicians and medical providers. I will re-evaluate him on January 9, 2018. If you have questions or need additional information, please call [redacted].

24.     On December 5, 2017, HealthSouth terminated Plaintiff's employment. The termination letter states in pertinent part as follows:

> Dear Jim,
>
> This letter is to confirm our phone call today regarding the status of your employment with HealthSouth. As we discussed, we received and reviewed

your request to work remotely from Nashville, Tennessee until at least January 8, 2018 due to your ongoing health issues. Unfortunately, we will not be able to accommodate this request. The position of Director of Tax Planning of HealthSouth Corporation carries significant and essential responsibilities that cannot be handled remotely, including, but not limited to, the direct supervision of subordinate employees at the company's home office in Birmingham, Alabama. As such, we will not be able to accommodate your request to work remotely during this period. Your PTO, including donations, exhausted yesterday. Because you have been employed less than a year, you are not eligible for FMLA leave and it would be an undue hardship to the company to approve a continued leave of absence from work. Therefore, your last day of employment with HealthSouth is today, December 5, 2017.

25.   Plaintiff's job description says nothing about his presence in the Birmingham office being an essential function of his position.

26.   In fact, physical presence at the Birmingham office is not an essential function because Plaintiff can fulfill all of his essential functions, including supervising subordinate personnel, while working remotely for a limited period of time. This is because Plaintiff had only two direct reports. One of these direct reports would have been working chiefly on projects for a different supervisor during the December, 2017 through January, 2018 time frame. The other is a long-term employee who does not require extensive in-person interaction.

27.   Plaintiff regularly furnished a current project listing and priorities to his supervisor. In Healthsouth parlance, this document is referred to as the

"Dashboard"

28.   At the time of termination, Plaintiff's Dashboard Report listing his projects and prioritization could all have been accomplished remotely with a reasonable accommodation and would not have imposed an undue hardship on the Company. The priority items were coordinating projects via phone and email with outside service providers located outside of Birmingham in Atlanta, Chicago, and Columbia South Carolina and drafting six research tax memorandums.

29.   Plaintiff's experience and work ethic along with wired connectivity tools such as cell phones, computers, high speed internet access and email provide easy access to remote work in Plaintiff's professional business job role. Plaintiff used these resources remotely to perform his duties.

30.   Factoring in existing December scheduled time off and company holidays, Plaintiff was requesting a total of 18 remote work days at the direction of his treating physician while an open wound healed.

31.   Plaintiff was informed that performance had nothing to do with his termination. Indeed, he had submitted his bonus paperwork and was on track to meet his 50% bonus expectation.

32.   Defendant discriminated against Plaintiff on the basis of his disability by

denying his request to work remotely for a limited period of time as a reasonable accommodation for his disability and by terminating his employment based on its refusal to provide a reasonable accommodation.

33.     Defendant also retaliated against Plaintiff for making a pre-eligibility request for post-eligibility FMLA leave, and interfered with his right to post-eligibility FMLA leave, when it terminated his employment prior to his eligible date as a result of his request for leave.

## V.     Causes of Action.

### A.     Americans With Disabilities Act – Failure to Accommodate and Intentional Discrimination Theories.

34.     Plaintiff re-alleges and incorporates by reference the above factual paragraphs with the same force and effect as if fully set out in specific detail below.

35.     This claim is brought against Defendant under both failure to accommodate and intentional discrimination theories under the ADA.

36.     Plaintiff has a condition which substantially limits at least one major life activity and/or he is regarded as such and/or has a record of a disability.

37.     Plaintiff is a qualified individual and can perform all the essential functions of his job with or without a reasonable accommodation.

38.     Plaintiff is entitled to a reasonable accommodation to enable him to perform

the essential functions of his job; however, Defendant denied Plaintiff the reasonable accommodation of working remotely for a limited period of time and instead and terminated his employment.

39.   Accommodating Plaintiff's disability would not have posed an undue hardship for Defendant.

40.   Defendant has imposed rules and standards which are not consistent with business necessity. These rules as applied have the effect of discriminating against the Plaintiff on the basis of his disability.  42 U.S.C. § 12112(b)(6).

41.   Plaintiff suffered damages as a result of Defendant's actions in denying him a reasonable accommodation and terminating his employment.

42.   Defendant, by its actions, has intentionally, maliciously and with reckless indifference discriminated against Plaintiff on the basis of his disability, his perceived disability and/or his record of a disability with regards to termination, employee compensation, benefits, and other terms and conditions of employment.

43.   Defendant treated non-disabled individuals more favorably than it treated Plaintiff.

44.   Plaintiff suffered damages as a result of Defendant's violations of the ADA.

   **B.   Family Medical Leave Act – Pre-eligibility Request for
         Post-Eligibility Leave – Retaliation and Interference.**

45.   Plaintiff re-alleges and incorporates by reference the above factual paragraphs with the same force and effect as if fully set out in specific detail below.

46.   Plaintiff has a chronic serious health condition as that term is defined by the FMLA and its implementing regulations.

47.   Plaintiff's requests to work for home constituted pre-eligibility requests for post-eligibility FMLA leave for his serious health condition.

48.   Plaintiff would have become eligible for FMLA leave on or around his one-year anniversary of January 10.

49.   Defendant had notice when it terminated Plaintiff that he would likely need to use FMLA as soon as he became eligible.

50.   By terminating Plaintiff before he became eligible for FMLA leave, Defendant interfered with his right to post-eligibility leave and reinstatement.

51.   Defendant terminated Plaintiff in order to avoid having to accommodate him with FMLA leave rights once Plaintiff became eligible.

52.   Plaintiff's pre-eligibility request for post-eligibility leave constituted protected activity under the FLMA's anti-retaliation provision.

53.   Defendant's termination of Plaintiff constituted unlawful retaliation for

Plaintiff's pre-eligibility request for post-eligibility leave. But for Plaintiff's pre-eligibility requests for post-eligibility leave, Defendant would not have terminated Plaintiff's employment.

54.   Defendant's actions in interfering with Plaintiff's FMLA rights and retaliating against Plaintiff for his exercise of those rights were willful.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.   Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendants are violative of the rights of Plaintiff as secured by the ADA, 42 U.S.C. §§ 12111 *et seq.*, and the FMLA, 29 USC § 2601 *et seq.*

2.   Grant Plaintiff reinstatement into the positions he would have occupied but for Defendant's discrimination, and a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys and those acting in concert with Defendant, and at Defendant's request, from continuing to violate Plaintiff's rights under the ADA, 42 U.S.C. §§ 12111 *et seq.*, and the FMLA, 29 USC § 2601 *et seq.*

3.   Enter an Order requiring Defendants to make Plaintiff an whole by awarding

him reinstatement in the position and salary level he would have occupied absent discrimination, back pay (including lost overtime compensation), liquidated damages for Defendant's willful violations of the FMLA, front pay if reinstatement is not possible, lost wages (plus interest), lost bonus opportunity of 50% salary, medical expenses, liquidated damages, post judgment interest, loss of benefits including medical insurance, life insurance, retirement, pension, seniority and other benefits of employment.

4.      Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses and post judgment interest on that amount.

**Plaintiffs Demand a Trial by Struck Jury.**

Respectfully submitted,

/s/ L. William Smith
Jon C. Goldfarb asb-5401-f58j
L. William Smith asb-8660-A61S
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB LLC
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

**Defendant's address:**
**ENCOMPASS HEALTH CORPORATION**
**c/o CT Corporation System**
**2 North Jackson Street, Suite 605**
**Montgomery, AL 36104**